Marc J. Randazza, NV Bar No. 12265
Randazza Legal Group
6525 Warm Springs Rd., Suite 100
Las Vegas, NV 89118
888-667-1113
305-437-7662 (fax)
MJR@randazza.com

Attorney for Plaintiff,
LIBERTY MEDIA HOLDINGS, LLC

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| THOMAS BELL, an individual, and LIBERTY MEDIA HOLDINGS, LLC, a California LLC<br><br>Plaintiffs,<br><br>vs.<br><br>ROBERT SCOTT BEAN a/k/a ILNY83<br><br>Defendant | Case No.:<br>Judge:<br><br>**COMPLAINT**<br><br>**(1)   CYBERSTALKING - INTRUSION UPON SECLUSION**<br>**(2)   COPYRIGHT INFRINGEMENT**<br><br>**INJUNCTIVE RELIEF SOUGHT** |

## INTRODUCTION

1.  Robert Scott Bean has an unhealthy obsession with Plaintiff Bell – a person with whom he has no actual personal connection.  In an example of classic stalker behavior, Mr. Bean has devoted significant time to plumbing the depths of any source he can, in order to gather personal information about Bell.  He has repeatedly contacted Bell, harassed Bell, and failing in his efforts to convince Bell to respond to his overtures, Mr. Bean has now taken up his cause by harassing Bell by publicizing personal and private information about him and his family.  Bell withstood this harassment with fear, anxiety, and concern until Mr. Bean finally stepped over the line of using Bell's toddler son as a tool for his obsessive behavior.  **Exhibit 1**.  Bell seeks this Court's assistance in putting an end to Mr. Bean's stalking.  Liberty Media Holdings is a film

1  company that uses Bell in its productions.  Mr. Bean has used LMH's copyright works in his
2  stalking activities in violation of LMH's rights under the Copyright Act.
3    2. Bell's concern over Bean's vehavior is exacerbated by the fact that Mr. Bean
4  appears to be a reclusive drug-user residing in a fantasy world.  Mr. Bean utilizes the death of a
5  past acquaintance that he claims was romantically involved with him to attempt to elicit contact
6  and sympathy from others on the internet.  He glorifies his frequent illegal drug-use by saving
7  and re-posting his requests to purchase drugs, descriptions of his highs, and suggesting that
8  others purchase illegal narcotics.  **Exhibit 2.**  Given Bean's seemingly loose grip on reality and
   drug abuse, Bell is concerned for his safety and well-being.
9    3. As further evidence of his instability, Mr. Bean expects people he is a fan of to
10 respond to his Facebook friend requests, tweets, and other internet postings.  Mr. Bean asks
11 celebrities to attend his wedding and declare their love for him.  **Exhibit 3.**  This places Bell in
12 fear that Mr. Bean's separation from reality may be pathological in nature.
13   4. When Bell rebuked Mr. Bean's begging request for a Facebook friendship, Mr.
14 Bean's obsession entered a heightened stage.  Mr. Bean requested a Facebook friendship with
15 Bell.  Bell declined and Mr. Bean sent several messages to him in May of 2010.  **Exhibit 4.**  Mr.
16 Bean's obsession continued and, more than a year later, in June of 2011, Mr. Bean made another
   desperate plea for Bell's attention.  **Exhibit 5.**
17
18   5. When Mr. Bean commented on Bell on a popular internet forum, he stated that his
19 opinions were formed because he knew Bell's girlfriend for a time and spoke to Bell on
20 Facebook and on Myspace.  **Exhibit 6.**  However, one glance at the correspondence between
21 Bell and Mr. Bean on Facebook tells a clearly different story.  Mr. Bean never knew anyone
22 close to Bell, and these claims place Bell in fear that Mr. Bean may be stalking him through
   other persons.
23   6. In subsequent posts, another user mentions that he had heard the Bell had a
24 random fan contact him on Facebook and other users agreed that randomly contacting an actor
25 on Facebook was "inappropriate" and "creepy".  **Exhibit 7.**  When Mr. Bean's delusions were
26 not supported by the other users of the message board (who may very well have actually been
27 discussing him), he ceased taking part in the discussion, but did not relent in his "inappropriate"
   and "creepy" behavior.
28

7. Both Plaintiffs have suffered damages as a result of Mr. Bean's intrusion upon seclusion and misappropriation and misuse of LMH's intellectual property, and LMH seeks monetary relief and injunctive relief under the Copyright Act, while Bell seeks injunctive relief.

## THE PARTIES

### PLAINTIFF, THOMAS BELL

8. Thomas Bell is a resident of Tampa, Florida and an actor for the Nevada-based Liberty Media Holdings, LLC.

9. Bell is an actor who has appeared in multiple productions for Liberty Media Holdings ("LMH") under a stage name.

## THE PARTIES

### PLAINTIFF, LIBERTY MEDIA HOLDINGS, LLC

10. LMH is a California corporation with a principal place of business in Las Vegas, Nevada, and it either owns all of the intellectual property relevant to this case, or has had the intellectual property assigned to it along with the right to bring any and all past, present, and future claims.

11. LMH owns all relevant rights and has both the right and the responsibility to bring this lawsuit in order to protect the valuable intellectual property at issue.

### DEFENDANT ROBERT SCOTT BEAN A/K/A ILNY83

12. Defendant Robert Scott Bean downloaded several movies from the LMH's CF Select website from November 10, 2011 to December 1, 2011. After doing so, he took copyrighted still images from these films' still images libraries and illegally reproduced them.

13. Mr. Bean, as part of his stalking behavior, misappropriated multiple works, copyrighted and owned by LMH, of Bell.

14. Defendant Bean utilizes an Instagram account to distribute the still photography he illegally reproduces and to publicize his drug usage and to make disparaging commentary on several individuals, sarcastically labeling them "Father of the Year," "Mother of the Year," or "College applicant." See **Exhibit 8.**

## JURISDICTION AND VENUE

15. Defendant Bean downloaded six works from the LMH's website, CF Select. When he did so, he agreed to a forum selection cause in the Terms and Conditions of the website. Which provides as follows:

> The parties agree to exclusive jurisdiction in, and only in, Las Vegas, Nevada.
>
> The parties agree to exclusive venue in, and only in, Las Vegas, Nevada.
>
> The parties additionally agree that this choice of venue and forum is mandatory and not permissive in nature, thereby precluding any possibility of litigation between the parties with respect to, or arising out of, this Agreement in a jurisdiction other than that specified.

As such, jurisdiction is not only appropriate in this court, but mandatory. See **Exhibit 9** at §§ 11.1.1.2 – 11.1.1.4. Three of the infringed upon works are from the works Defendant downloaded from CF Select, in accordance with the Terms and Conditions of the site.

16. Furthermore, five of the six videos that he downloaded feature the same actor, and the still images from each video are the works that Mr. Bean infringed upon.

17. This Court has subject matter jurisdiction pursuant to the Copyright Act (17 U.S.C. §§ 101 et. seq.), 28 U.S.C. §§ 1331, 1338(a), 2201, and 2202 and Nev. Rev. Stat. § 14.065.

18. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, as a substantial part of the events or omissions giving rise to the claims pleaded herein occurred in this district, and thus, this venue is the most appropriate forum in which this case should be heard.

## FACTS COMMON TO ALL CLAIMS

### LMH'S PROPERTY

19. Corbin Fisher® is a well-known name in the adult entertainment business featuring gay erotic content.

20. LMH is the author of the original works of expression "Dawson & Jeff," "Cade Fucks Jeff," "Zeke's First Time," and "Joel Fucks Jeff", motion pictures and sets of still photographs registered with the U.S. Copyright Office. Copies of the copyright registrations are attached as **Exhibit 10**.

21. LMH is also the author of the original works of expression "Jeff Plows Dawson," "Josh Rides Jeff," "Jeff and Derek," and "Jeff Cums in Colby's Mouth," motion pictures and sets of still photographs pending registration with the U.S. Copyright Office.

22. Plaintiff LMH did not give Defendant permission to republish its copyrighted work.

23. LMH occasionally allows its copyrighted works to be used by third parties under strict licensing agreements that control the quality of the publication, the use of the LMH's logos or other identifying information, and which require the payment of a fee that is never less than $5,000 in cash or other valuable consideration. Mr. Bean did not enter into such an agreement, nor did he even attempt to do so.

24. The commercial value of the relevant Copyrights has been diminished by the Defendants' actions.

## THE DEFENDANTS' WRONGFUL ACTS

25. The Defendant took LMH's copyrighted works and used the works as his own with the intent of disparaging, harassing, and stalking LMH's actor. The Defendant did so for his own amusement and stalkerish desires, without Plaintiffs' permission.

26. The Defendant used and published the LMH's work without any regard as to the LMH's rights.

27. A true and correct copy of the Defendant's website displaying the LMH's Intellectual Property is attached as **Exhibit 1.** A guide matching the Defendant's infringements with the copyright registrations is attached as **Exhibit 11.**

28. Three of the eight infringing photographs are from the CF Select website, and correspond to motion pictures purchased on a pay-by-film basis by Defendant.

29. Two of the eight infringing photographs are from the Corbin Fisher website and are copyrighted, high-quality still photographs that can be viewed by guests to the website.

30. Two of the eight infringing photographs are screen captures from Corbin Fisher motion pictures that Defendant did not legally purchase through the Corbin Fisher websites.

31. One of the eight infringing photographs is from the Corbin Fisher Myspace page.

32. Defendant knowingly and willfully infringed upon the LMH's copyrights.

33. Neither Plaintiffs nor any other person granted Defendant the right to reproduce, copy, or distribute LMH's work, nor to exploit the Work for the Defendant's own use.

34. The Defendant never acquired permission to use the Work, yet the Defendant still distributed the Work.

35. LMH's intellectual property is extremely valuable.

36. LMH occasionally licenses its copyrighted works to select licensees, but has strict requirements for such licensing in order to preserve the commercial value of its intellectual

property, which is cheapened and diminished when distributed improperly. Any license of LMH's works requires that the Licensee:

    a. Provide credit to LMH,

    b. Present the Intellectual Property in a high-quality environment,

    c. Adhere to strict quality and presentation controls,

    d. Pay a minimum fee of $5,000, but often more.

37. The Defendant's use of LMH's work adhered to none of these standards. In fact, the Defendant provided no credit to LMH, presented the work in a poor quality environment, intentionally removed the Corbin Fisher trademark from the images, used no quality or presentation controls, and paid no licensing fee.

38. Furthermore, the Defendant's acts are consistent with stalking behavior. Liberty does not allow stalkers to use its materials in order to harass their victims, and has an obligation to protect the rights of its performers.

## FIRST CAUSE OF ACTION
### (Cyberstalking – Intrusion Upon Seclusion)

39. Plaintiffs re-allege and incorporate by reference as if verbatim, each and every paragraph above.

40. Mr. Bean has engaged in a concerted campaign to harass Bell, to intrude into his private life, to place him, and his minor son, in apprehension and fear.

41. Mr. Bean disclosed private facts about Bell, where the relevance of, a reasonable person would find offensive.

42. Bell has suffered damages as a result of Mr. Bean's actions in an amount to be determined at trial.

43. Bell seeks injunctive relief appropriate to restrain Mr. Bean from further acts of stalking, harassment, and intrusion upon the seclusion of his and his children's lives.

## SECOND CAUSE OF ACTION
### (Copyright Infringement 17 U.S.C. § 501)

44. Platinffs re-allege and incorporate by reference as if verbatim, each and every paragraph above.

45. Defendant misappropriated eight of LMH's copyrighted images of Bell and unlawfully used these images. Furthermore, Defendant removed the Corbin Fisher watermarks

from these images, and commented on the photographs that these images were from Corbin Fisher, showing clear knowledge that the ownership of these photos lies with LMH.  A copy of the webpage displaying the photo and the comments on this photo is attached.  See **Exhibit 1.**

46. The Defendant's actions are a violation of LMH's copyrights as protected by Title 17 of the U.S. Code.

47. The Defendant's actions were willful in nature, entitling LMH to enhanced damages.  LMH seeks statutory damages, actual damages, an award of its attorney's fees and costs, as well as injunctive relief to ensure that Defendant engages in no future activity of a similar nature.

48. At all times relevant hereto, LMH has been the owner and producer of the copyrighted work, which was reproduced, distributed, and publicly displayed by the Defendant on the Instagram website.

49. LMH has copyrighted the Works with the United States Copyright Office.

50. Without authorization, the Defendant reproduced and distributed LMH's copyrighted and registered works.

51. The Defendant's conduct was willful within the meaning given to that term by the Copyright Act.

52. As a result of its wrongful conduct, the Defendant is liable to LMH for copyright infringement under 17 U.S.C. § 501.

53. LMH is entitled to recover statutory damages under 17 U.S.C. § 504(c).

54. In addition, because the Defendant's infringing acts were willful, the award of statutory damages should be enhanced in accordance with 17 U.S.C. § 504(c)(2).

55. LMH is entitled to recover its attorneys' fees and costs of suit pursuant to 17 U.S.C. § 505.

**WHEREFORE; LMH PRAYS**

1. That the Court issue a Permanent Injunction prohibiting the Defendant from future misconduct of the type complained of in the Action.

2. For statutory or actual, and/or exemplary damages.  The actual damages in this case are no less than $40,000, since there are 8 works at issue and the Plaintiff charges a minimu of $5,000 to license each image.

     3.    That Defendant be required to deliver up to be impounded during the pendency of this action:

        a.    All copies of LMH's works, in any format, in Defendant's possession or under their control,

        b.    All hard drives or other storage devices that contain LMH's works or other copyrighted images.

     4.    That Defendant pay to LMH its reasonable attorneys' fees pursuant to 17 U.S.C. § 505.

     5.    That Defendant pay LMH and Bell the costs of this action; and,

     6.    For any additional and further relief which this Court deems to be just and proper.

Dated: April 17, 2012                            Respectfully Submitted,

                                                  *s/ Marc J. Randazza*
Marc J. Randazza
Randazza Legal Group
6525 Warm Springs Road Suite 100
Las Vegas, NV 89118
702-441-0739
305-437-7662 fax